**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-6396**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

  v.

DONZELL ALI MCKINNEY,

        Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:12-cr-00085-MR-WCM-1; 1:16-cv-00149-MR)

───────────────

Argued:  September 13, 2022                Decided:  February 16, 2023

───────────────

Before WILKINSON, Circuit Judge, and MOTZ and KEENAN, Senior Circuit Judges.

───────────────

Reversed and remanded by published opinion.  Senior Judge Motz wrote the opinion, in which Senior Judge  Keenan concurred.  Judge Wilkinson wrote a dissenting opinion.

───────────────

**ARGUED:**  Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina,

for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

DIANA GRIBBON MOTZ, Senior Circuit Judge:

In 2012, Donzell Ali McKinney pled guilty to two counts — conspiracy to commit Hobbs Act robbery and a violation of 18 U.S.C. § 924(c) for discharging a firearm during and in relation to that conspiracy. Under subsequent controlling precedent, McKinney now stands convicted of, and imprisoned for, conduct that does not violate § 924(c) and in fact is not criminal. Accordingly, he brought this 28 U.S.C. § 2255 motion asking the district court to vacate his § 924(c) conviction. The district court refused to do so, and McKinney now appeals. For the reasons that follow, we reverse and remand the case to the district court with instructions to vacate McKinney's § 924(c) conviction and for further proceedings consistent with this opinion.

I.

This case arises from a September 2011 conspiracy to rob a barbecue restaurant in Asheville, North Carolina. At around 2:00 a.m., McKinney and his coconspirator approached two women who had left the restaurant. After hitting one woman on the head, McKinney ordered them to the ground and started beating on the restaurant's door. When the restaurant manager came to the door, McKinney pointed a gun at the manager, demanded he open the door, discharged the gun (wounding no one), and ordered him to hand over money in the safe. McKinney and his coconspirator fled with $451.

In a three-count indictment, the Government charged McKinney with substantive Hobbs Act robbery, Hobbs Act conspiracy, and a violation of § 924(c) predicated on substantive Hobbs Act robbery. J.A. 6–9. But a careful review of the record reveals that McKinney expressly refused to plead guilty to substantive Hobbs Act robbery and the

3

§ 924(c) count predicated on it. S.J.A. 14–16. Indeed, two plea hearings failed because of McKinney's persistent refusal to plead guilty to those counts. S.J.A. 28–31.

The Government then filed a bill of information charging McKinney with Hobbs Act *conspiracy* and a single § 924(c) count with Hobbs Act *conspiracy* as the *sole* predicate offense. J.A. 18–20. McKinney agreed to plead guilty to these two counts in the bill of information in exchange for the Government's agreement to dismiss the remaining charges. S.J.A. 62. McKinney's plea agreement, entered in 2012, included a waiver of the right to contest his conviction and sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. The district court sentenced McKinney to 70 months for Hobbs Act conspiracy and 120 months for the § 924(c) conviction predicated on Hobbs Act conspiracy, to run consecutively. McKinney did not pursue a direct appeal.

Four years later, in 2016, McKinney filed a § 2255 motion to vacate his § 924(c) conviction and sentence. In his motion, he pointed out that *Johnson v. United States*, 576 U.S. 591 (2015), had struck down the residual clause of the Armed Career Criminal Act (ACCA) as unconstitutionally vague, and *Welch v. United States*, 578 U.S. 120 (2016), held *Johnson* retroactively applicable on collateral review. McKinney argued that because § 924(c)'s residual clause was "functionally indistinguishable" from the ACCA's residual clause, his § 924(c) conviction could not stand. The district court stayed the matter pending decisions from the Supreme Court and this court. Three years later, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), holding that the residual clause of § 924(c), too, was unconstitutionally vague. McKinney filed a supplemental motion arguing that *Davis* further compelled vacatur of his § 924(c) conviction.

4

The Government moved to dismiss McKinney's § 2255 motion, asserting that the appeal waiver in his plea agreement and procedural default foreclosed his claim. In January 2020, the district court granted the Government's motion to dismiss. Acknowledging that McKinney's § 924(c) conviction was likely invalid, the district court nonetheless found that the appeal waiver barred his challenge and that McKinney failed to show cause and prejudice or actual innocence to excuse his procedural default. We granted McKinney a certificate of appealability on the following issues: (i) whether his § 924(c) conviction is invalid in light of *Davis*; (ii) whether his appeal waiver bars his claim; (iii) whether he has demonstrated cause and prejudice to excuse his procedural default; and (iv) whether he has demonstrated actual innocence to excuse his procedural default.

## II.

We review the district court's denial of a § 2255 motion de novo. *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020).

Although we typically reach the underlying merits of a § 2255 motion last, this is an unusual petition in that the merits are clear-cut. Indeed, the Government concedes the invalidity of McKinney's § 924(c) conviction predicated on Hobbs Act conspiracy. *See* Br. of the United States 16.

The concession is well-taken. In *Davis*, 139 S. Ct. at 2336, the Supreme Court held that the residual clause of § 924(c) was unconstitutionally vague, leaving only the question of whether Hobbs Act conspiracy could be a "crime of violence" under the elements clause of § 924(c). We held in *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc), that Hobbs Act conspiracy also could not constitute a "crime of violence" under the

5

elements clause of § 924(c).    Moreover, we have since held that *Davis* "applies retroactively to cases on collateral review." *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021).

The record is clear that the *sole* predicate offense underlying McKinney's § 924(c) conviction is Hobbs Act conspiracy.  J.A. 18–20.  McKinney's plea agreement stated that he was agreeing to enter a guilty plea to the two counts set forth in the bill of information.  J.A. 151.  The bill of information charged McKinney with Hobbs Act *conspiracy* and use of a firearm "during and in relation to a crime of violence, that is *conspiracy* to commit interference with commerce by threats and violence," in violation of § 924(c).  J.A. 19 (emphasis added).  Because Hobbs Act conspiracy does not constitute a predicate "crime of violence" for a § 924(c) violation, McKinney stands convicted of a crime that no longer exists.  Ordinarily, that alone would entitle him to relief on his § 2255 motion.

### III.

The Government contends, however, that McKinney executed a plea agreement that bars his claim.  Specifically, it argues that because McKinney does not raise either of the two types of claims expressly exempted from the waiver in his plea agreement — ineffective assistance of counsel and prosecutorial misconduct — he cannot challenge his conviction on any other grounds.

Although McKinney does not raise those claims or contend that his appeal waiver was invalid, he nonetheless argues that we should refuse to enforce it.  We can do so under a few limited circumstances.  *See, e.g.*, *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (recognizing that we refuse to enforce an appeal waiver when a sentence is imposed

6

in excess of the statutory maximum or is based on a constitutionally impermissible factor). Among these is the most fundamental reason, that is, if enforcing an appeal waiver would result in a "miscarriage of justice." *See United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016); *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005).

As we explained in *Adams*, to establish such a miscarriage of justice, a defendant need only make "a *cognizable claim* of actual innocence." 814 F.3d at 182 (emphasis added). The appeal waiver in *Adams* was substantially similar to the one in this case: it "waived [Adams's] right to challenge his conviction or sentence in a motion pursuant to 28 U.S.C. § 2255 unless he did so on the basis of ineffective assistance of counsel or prosecutorial misconduct." *Id.* at 180. And in *Adams*, we found that, in light of intervening precedent invalidating a § 922(g) conviction because it was no longer based on a valid predicate, the defendant made "a cognizable claim of actual innocence." *Id.* at 182. For this reason, the defendant in *Adams* met the standard for miscarriage of justice, and his appeal waiver did not bar his claim. *Id.* at 183.

That logic applies here. Under *Davis* and *Simms*, Hobbs Act conspiracy no longer qualifies as a predicate offense for a § 924(c) conviction. McKinney, like Adams, has made a cognizable claim of actual innocence and so, like Adams, has satisfied the miscarriage-of-justice requirement. *See also United States v. Sweeney*, 833 F. App'x 395, 396–97 (4th Cir. 2021) (declining to enforce an appeal waiver and vacating a § 924(c) conviction because attempted Hobbs Act robbery and Hobbs Act conspiracy are no longer

7

valid predicates).[1]  Accordingly, McKinney's appeal waiver does not bar his claim for relief.

IV.

Absent a controlling appeal waiver, McKinney's claim ordinarily would not be barred from collateral review.  However, the Government contends that an affirmative defense, *i.e.*, procedural default, bars consideration of his claim on the merits.  This defense rests on a contention that a defendant has failed to raise the claim at issue during his initial criminal proceeding or on direct appeal.  *See United States v. Harris*, 991 F.3d 552, 558 (4th Cir. 2021).  Without an excuse for this failure, the procedural-default doctrine precludes a defendant from asserting that claim on collateral review.

Two showings excuse a procedural default:  a defendant's demonstration of "either cause and actual prejudice or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (cleaned up).  As directed by the Supreme Court, we first address cause and prejudice for procedural default.  *See Dretke v. Haley*, 541 U.S. 386, 393–94 (2004) (stating that when an actual-innocence excuse is raised, a court "must first address

---

[1] In a Rule 28(j) letter, the Government relies on a statement respecting the denial of certiorari in *Grzegorczyk v. United States*, 142 S. Ct. 2580 (2022), to contend that McKinney's guilty plea precludes this argument.  Given that the "denial of a writ of certiorari imports no expression of opinion upon the merits of the case," and that "opinions accompanying the denial of certiorari cannot have the same effect as decisions on the merits," *Teague v. Lane*, 489 U.S. 288, 296 (1989) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)), we reject this contention as a basis for overruling binding circuit precedent.

8

all . . . other grounds for cause to excuse the procedural default").[2]  Because we find cause

and prejudice here, we need not reach the actual-innocence excuse for procedural default.

A.

We begin with cause.  Generally, the existence of cause for procedural default turns

on whether "some objective factor external to the defense" prevented counsel from raising

the claim on direct appeal.  *See Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986).  For

example, a claim that "is so novel that its legal basis is not *reasonably available* to counsel"

may constitute cause.  *Reed v. Ross*, 468 U.S. 1, 16 (1984) (emphasis added).  In *Reed*, the

Supreme Court delineated three situations in which the novelty of a claim could constitute

cause:

> First, a decision of [the Supreme] Court may explicitly overrule one of [its] precedents.  Second, a decision may "overtur[n] a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved."  And, finally, a decision may "disapprov[e] a practice [the Supreme] Court arguably has sanctioned in prior cases."

---

[2] We note that we have already expressly rejected the Government's procedural-default challenge to a successive § 2255 motion raising a *Davis* claim, reasoning that *Davis* "established a new rule of constitutional law made retroactive on collateral review."  *See United States v. Jackson*, 32 F.4th 278, 283 & n.3 (4th Cir. 2022).  It would be odd indeed to reject the Government's procedural-default defense in *Jackson* but not in this case, which also involves a *Davis* claim.  The Government, however, insists that *Jackson* does not control here because in *Jackson*, we ultimately denied the defendant's claim on the merits, and so the procedural-default analysis was not "necessary" to our outcome.  The Government also argues that *Jackson* failed to address earlier precedent requiring cause and prejudice and that *Jackson* involved a jury trial, not a guilty plea.  Because, as our analysis within explains, McKinney has demonstrated cause and prejudice that would overcome any procedural default, we need not here resolve the force of *Jackson*.

*Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551–52 (1982)).  Further, as *Reed* instructs, finding cause for cases falling into the third category depends on "how direct [the Supreme] Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice."  *Id.* at 17–18.

The third *Reed* category contemplates precisely the type of novel claim McKinney advances here.  At the time McKinney pled guilty in 2012 and was sentenced in 2013, the Supreme Court had affirmatively upheld the constitutionality of residual clauses like the one at issue here.  In the years leading up to McKinney's guilty plea and sentence, the Supreme Court had repeatedly treated the residual clause of the ACCA as if it were sufficiently determinate to put an ordinary person on notice of what conduct it prohibited. *See, e.g.*, *Sykes v. United States*, 564 U.S. 1, 15 (2011); *James v. United States*, 550 U.S. 192, 210 n.6 (2007).

In fact, in 2007 in *James*, 550 U.S. at 210 n.6, the Court summarily rejected the argument that the ACCA's residual clause was unconstitutionally vague.  And in doing so, it emphasized that "similar formulations" appeared in other federal statutes.  *Id.*[3]  In sum, when McKinney pled guilty in 2012 and was sentenced in 2013, Supreme Court precedent

---

[3] Subsequently, the Supreme Court specifically noted the similarity among the residual clauses of § 924(c) and the ACCA.  *See Davis*, 139 S. Ct. at 2325–26; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1215 (2018) (relying on *Johnson* to find 18 U.S.C. § 16(b)'s residual clause, which is virtually identical to § 924(c)'s residual clause, unconstitutionally vague).

had effectively foreclosed the claim McKinney now asserts. It was not until 2015, when the Court decided *Johnson*, that it struck down a residual clause for vagueness and therefore it was not until then that this claim became "reasonably available." *See Reed*, 468 U.S. at 16.

Moreover, before 2015, the practice within our circuit — and indeed, across circuits — was well entrenched. *See id.* at 17. Our court hewed closely to the Supreme Court's resistance to void-for-vagueness challenges in cases involving residual clauses in the ACCA and elsewhere. *See, e.g.*, *United States v. Mobley*, 687 F.3d 625, 632 n.7 (4th Cir. 2012); *United States v. Hudson*, 673 F.3d 263, 268–69 (4th Cir. 2012).

With respect to § 924(c)'s residual clause, specifically, we have found no cases in any federal court of appeals prior to the Supreme Court's issuance of *Johnson* in 2015 that adopt a vagueness argument. Again, it was only after the Supreme Court issued *Johnson* that courts of appeals, including our own, began to reconsider the constitutionality of § 924(c)'s analogous residual clause. *See, e.g.*, *Simms*, 914 F.3d at 236; *United States v. Douglas*, 907 F.3d 1, 4 (1st Cir. 2018); *Ovalles v. United States*, 905 F.3d 1231, 1233 (11th Cir. 2018); *United States v. Barrett*, 903 F.3d 166, 173 (2d Cir. 2018); *United States v. Eshetu*, 898 F.3d 36 (D.C. Cir. 2018); *United States v. Salas*, 889 F.3d 681, 683 (10th Cir. 2018). Accordingly, prior to 2015, there was "almost certainly . . . no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position" ultimately endorsed by the Supreme Court in *Johnson*. *See Reed*, 468 U.S. at 17. Thus, McKinney has established cause. *See Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022) (finding cause for procedural default under *Reed* where defendant's 2005 conviction

11

for a violation of § 924(c) no longer had a valid predicate); *United States v. Garcia*, 811 F. App'x 472, 480 (10th Cir. 2020) (finding cause for procedural default where defendant's 2013 conviction for a violation of § 924(c) was invalid after *Davis*).

Seeking to avoid this conclusion, the Government ignores *Reed* and instead relies on *Bousley* for the proposition that "futility cannot constitute cause" if "a claim was 'unacceptable to that particular court at that particular time.'" 523 U.S. at 622–23 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (finding no cause because "at the time of petitioner's plea, the Federal Reporters were replete with cases" considering the same argument). But *Bousley* is inapposite. The claim in *Bousley* did not arise out of the Supreme Court *overturning its own precedent*. *See Lassend v. United States*, 898 F.3d 115, 123 (1st Cir. 2018); *Gatewood v. United States*, 979 F.3d 391, 397 (6th Cir. 2020) (noting that *Reed* remains the "controlling decision" where Supreme Court precedent forecloses an argument at the time of procedural default).[4] That distinction is critical. At the time of his guilty plea in 2012 and sentence in 2013, McKinney's claim would have been rejected by our court and every other circuit due to then-controlling Supreme Court precedent.

In sum, when McKinney pled guilty in 2012 and was sentenced in 2013, the Supreme Court had implicitly approved § 924(c)'s residual clause. Only several years later, in 2015, did the Court in *Johnson* cause a sea change in the law, disapproving its prior precedent upholding similar residual clauses against void-for-vagueness challenges.

---

[4] For the same reasons, we are unpersuaded by the Government's reliance on *Whiteside v. United States*, 775 F.3d 180, 185–87 (4th Cir. 2014) (en banc), and *United States v. Sanders*, 247 F.3d 139, 145–46 (4th Cir. 2001), neither of which involved claims based on the Supreme Court overturning its own precedent.

And it was not until 2019 that *Davis* dealt the final blow to § 924(c)'s residual clause. McKinney's case falls squarely within *Reed*'s "novelty" framework, and so he has shown cause for his procedural default.

B.

We turn to the prejudice prong. To establish prejudice, a defendant must show that the error "worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). The Supreme Court has yet to define the exact contours of the prejudice standard in the § 2255 procedural-default context. *See id.* at 168 (noting that "future cases" would provide "further elaboration" on prejudice, outside the context of erroneous jury instructions given at trial).

What is clear is that McKinney's § 924(c) conviction subjects him to imprisonment for conduct that the law does not make criminal. In finding another § 2255 claim cognizable, the Supreme Court has explained that if the defendant's "conviction and punishment are for an act that the law does not make criminal," then "[t]here can be no room for doubt that such a circumstance '*inherently results* in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." *Davis v. United States*, 417 U.S. 333, 346–47 (1974) (emphasis added). Accordingly, in analogous cases, our sister courts have found prejudice justifying collateral relief when the defendant's conviction or sentence is no longer "authorized by law." *See, e.g.*, *Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) (ACCA); *United States v. Snyder*, 871 F.3d 1122, 1127–28 (10th Cir. 2017) (same); *Garcia*, 811 F. App'x at 480 (§ 924(c)).

13

However, the Government argues, and the district court held, that McKinney cannot establish prejudice because, had McKinney "raised his constitutional challenge" at or prior to sentencing, the Government "would not have dismissed the . . . § 924(c) charge predicated on the Hobbs Act robbery," and McKinney "likely would have received the same sentence." *See McKinney v. United States*, No. 1:16-cv-00149-MR, 2020 WL 475196, at *5–6 (W.D.N.C. Jan. 29, 2020). This is so, the Government contends, because the *dismissed* § 924(c) count was based on an (also *dismissed*) substantive Hobbs Act robbery count, which could constitute a valid predicate. The dissent, too, espouses this theory.[5]

But where the record in a case shows that a count of conviction is now invalid, no precedent authorizes a court to then rely on a dismissed count to negate that demonstrated prejudice. Rather, in determining prejudice, we ask whether it is likely a defendant, had he known of the error, would not have pled guilty to the *count of conviction. See, e.g.*, *United States v. Dominguez Benitez*, 542 U.S. 74 (2004); *United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022). We do not look to whether it is likely a defendant, had he known of the error, would not have pled guilty to a *dismissed count*. (Of course, in this case, the record also makes abundantly clear that McKinney likely would not have pled guilty to the dismissed § 924(c) count — two plea hearings failed because he resolutely refused to plead guilty to the dismissed counts. S.J.A. 28–31; *see Heyward*, 42 F.4th at 460 (explaining that we may look to "contemporaneous evidence to substantiate a defendant's expressed

---

[5] To be clear, the analysis set forth in the next five paragraphs constitutes our fact specific holding in this case, not some "per se rule" conjured up by the dissent.

preferences" (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).  The dissent ignores the record when stating that our statement of this fact is "incorrect.")

It is telling that none of the cases cited by the Government or the dissent permit an appellate court to base its prejudice holding on a count the Government agreed to dismiss, and the district court did dismiss, in exchange for the defendant's guilty plea.  None of those cases require or permit an appellate court to search for an alternative, valid predicate offense that the Government did *not* charge as the predicate for the count of conviction. And none of those cases permit an appellate court to find a crime for which a defendant was *not* convicted to uphold an indisputably invalid conviction and justify the sentence for that invalid conviction.

Adhering to what simple justice requires in this circumstance, the Eighth Circuit in *Jones*, 39 F.4th at 526, recently rejected the Government's similar attempt to use a dismissed count to negate a finding of prejudice.  There, as here, the defendant challenged his § 924(c) conviction because it was no longer sustained by a valid predicate offense.  *Id.* There, as here, the Government claimed that, had it known of the error, it could have based the § 924(c) count on an alternative predicate offense:  carjacking, the factual basis for which the defendant had admitted at the plea hearing.  *Id.* at 525.  But the Eighth Circuit rejected this argument, reasoning that the "carjacking was not *charged* as a predicate crime of violence," and so the Government could not rely on it to sustain that count and negate a

15

finding of prejudice. *Id.* (emphasis added). So it is here.[6] We likewise refuse to substitute an alternative predicate, not charged as the basis for the § 924(c) count of conviction, to negate a finding of prejudice.

Moreover, delving into whether a defendant ultimately would have received the same sentence, based on an uncharged or dismissed charge, improperly equates the standards for actual innocence and prejudice for the purpose of excusing procedural default. *See United States v. Jimenez-Segura*, 476 F. Supp. 3d 326, 338 (E.D. Va. 2020) (Ellis, J.). Actual innocence and prejudice are not one and the same. The Supreme Court has made that clear, stating that actual innocence requires "a stronger showing than that needed to establish prejudice." *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). To demonstrate *actual innocence* sufficient to excuse procedural default, a defendant must show that he is actually innocent of (i) the charge on which he was convicted *and* (ii) more serious, dismissed charges. *Bousley*, 523 U.S. at 624. In contrast, demonstrating *prejudice* sufficient to excuse procedural default "does not require consideration of the charges foregone by the Government in the course of plea bargaining." *Jimenez-Segura*, 476 F. Supp. 3d at 338; *see also Calderon v. United States*, No. 7:12-CR-37-FA-2, 2022 WL

---

[6] Thus the *only* other appellate court to consider the question has recently held, as we do, that a dismissed count cannot negate a finding of prejudice. The dissent does not, and cannot, distinguish *Jones*, and so instead attempts to trivialize it as "brief" and "incorrect," Dis. Op. at 36 n.2, or wish it away, *id.* at 35 (stating "the majority cites no binding or persuasive case for the proposition that it is illegitimate to consider dismissed counts as part of the factual prejudice inquiry"). *But see Lee*, 137 S. Ct. at 1967; *Dominguez Benitez*, 542 U.S. at 83–85; *Schlup*, 513 U.S. at 327 (all lending support to the holding reached here and in *Jones*).

821152 (E.D.N.C. Mar. 17, 2022) (following the "thoughtful and well-reasoned opinion" in *Jimenez-Segura*).

Furthermore, conviction and sentencing are quintessentially tasks carried out at the trial level. The Government and the dissent would instead have this appellate court convict McKinney in the first instance of a § 924(c) count, which the Government did not charge as the count of conviction, to which McKinney did not plead guilty, and which the Government in fact dismissed. That we cannot do. *Cf. United States v. Hodge*, 902 F.3d 420, 430 (4th Cir. 2018) ("We will not allow the Government to change its position regarding which convictions support [an] ACCA enhancement now that one of its original choices . . . cannot do the job.").

For all these reasons, we reject the Government's, and now the dissent's, prejudice theory and decline to import the dismissed § 924(c) charge into our assessment of prejudice. Fact-specific considerations underlying the *dismissed counts* are for the Government to raise on remand when the district court can assess them in exercising its discretion to carry out further proceedings consistent with this opinion. Because the error here worked to McKinney's "actual and substantial disadvantage," he has established prejudice to excuse his procedural default.

\*       \*       \*

Before concluding, we briefly address the dissent's accusation that we have established a rule "fundamentally at odds with the most basic of principles of our criminal justice system." Dis. Op. at 19. In fact, it is the dissent that would establish such a rule, convicting a defendant in the first instance of a § 924(c) count to which the defendant

17

refused to plead guilty and which the Government never charged as the count of conviction, but instead dismissed.

V.

The district court erred by denying McKinney's § 2255 motion on the grounds that the appeal waiver barred his claim and that he failed to show cause and prejudice to excuse his procedural default. Therefore, we reverse the judgment of the district court. We remand the case with instructions to vacate McKinney's § 924(c) conviction predicated on Hobbs Act conspiracy and for further proceedings consistent with this opinion, including resentencing on the remaining count.

*REVERSED AND REMANDED*

WILKINSON, Circuit Judge, dissenting:

Donzell McKinney pleaded guilty in 2012 to an 18 U.S.C. § 924(c) violation. His plea was altogether valid and lawful when it was entered. Section 924(c) makes criminal the use of a firearm in connection with a crime of violence. The predicate crime of violence in McKinney's case was Hobbs Act conspiracy, which was entirely understandable, given the terms of the statute and McKinney's undisputed criminal conduct. McKinney never raised any objection to the validity of this predicate, thereby procedurally defaulting the claim.

Seven years after his plea was entered, Hobbs Act conspiracy was ruled invalid as a § 924(c) predicate crime of violence. *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc). In the normal course, McKinney must establish cause and prejudice to excuse his procedural default. This would involve a review of the plea bargain and proceedings as well as McKinney's own conduct, in an effort to determine whether absent the error there was a "substantial likelihood" that McKinney would not have pleaded guilty. *United States v. Frady*, 456 U.S. 152, 174 (1982). The majority did absolutely none of this. It did not confront the sheer strength of the case against McKinney. It proceeded to rule that prejudice was automatic irrespective of whether the relevant facts establish it. This per se rule is fundamentally at odds with the most basic of principles of our criminal justice system.

The majority strenuously seeks to shed the per se label, but its protestations fail to obscure the fact that this is both formally and functionally a per se case. *See* Maj. Op. at 14 n.5. Its per se rule is plain: All one needs to do is examine the present status of a past

19

predicate to reverse a § 924(c) conviction. *See id.* at 13–15 (repeatedly emphasizing the per se proposition). With all respect to my friends in the majority, a wolf in sheep's clothing remains a wolf.

I.

Prejudice in our criminal justice system is preeminently a factual matter. The majority wishes to convert prejudice to a matter of per se reversal under law. This not only denies courts the ability to make individualized assessments of a defendant's circumstances. It often privileges, as here, the most violent and least deserving criminals. Indeed those offenders will become free riders on the majority's per se train. The Supreme Court has repeatedly flagged courts off the tracks that the majority is taking here.

Just consider the facts. Donzell McKinney indisputably violated 18 U.S.C. § 924(c) by using a firearm during a Hobbs Act robbery. According to the Presentence Investigation Report:

> Donzell Ali McKinney and Clinton Hugo Wilson, Jr.[] entered the restaurant, one armed with a black handgun, and ordered the manager A. Booher to get money out of the safe.

> The investigation revealed McKinney and [Wilson] dressed in hoodies approached two women, O. Kulakova and B. Scott who had left the restaurant. Kulakova was hit in the head by McKinney and then he ordered the females to the ground outside the restaurant and started beating on the door of the restaurant. Wilson dragged witness Scott through the doorway into the restaurant. Witness K. Robinson drove up to the restaurant in her vehicle, saw a woman lying on the ground in the doorway and saw Booher on his knees with his hands in the air. McKinney went to Robinson, ordered her out of the vehicle, put a gun to her head

20

and ordered her inside the restaurant. Booher went to the door to investigate the noise and McKinney pointed a black 9 mm handgun at Booher and yelled, "Open the fucking door!" When Booher did not move fast enough, McKinney fired a round in the direction of Booher. . . . Officers . . . conducted an extensive manhunt and located McKinney hiding in bushes . . . . Officers also recovered a loaded Hi Point 9mm pistol.

J.A. 162. McKinney's only objections to the PSR were that he fired his weapon "toward the ceiling" rather than at Booher and that he did not point his weapon at Robinson's head. J.A. 177.

Given these horrific and largely uncontroverted facts, the government only agreed to dismiss the Hobbs Act robbery count and the related § 924(c) charge on the condition that McKinney plead guilty to conspiracy to commit Hobbs Act robbery and a § 924(c) count predicated on that conspiracy. McKinney therefore suffered absolutely no prejudice from his now invalid conspiracy-based § 924(c) conviction: Had the error existed at the time of the plea, McKinney would unquestionably have been convicted of an identical § 924(c) count predicated on the substantive robbery offense that he undoubtedly committed. McKinney therefore cannot satisfy his burden to show "actual prejudice" that would excuse his procedural default. *United States v. Frady*, 456 U.S. 152, 159 (1982); *see Wainwright v. Sykes*, 433 U.S. 72, 90–91 (1977) (establishing "cause and prejudice" standard).

The majority errs in concluding otherwise and sets a damaging precedent for future procedural-default cases. It holds that McKinney has established prejudice to excuse his procedural default because his "§ 924(c) conviction subjects him to imprisonment for

21

conduct that the law does not make criminal." Maj. Op. at 13; *see id.* at 17 ("reject[ing] the Government's . . . prejudice theory"—*i.e.*, that McKinney suffered no prejudice because he "likely would have received the same sentence"). The sweep of this reasoning is vast and consequential. Under the majority's view, all individuals convicted under later-invalidated provisions have suffered prejudice regardless of the specific facts of each case. This reasoning constructs a per se rule that a conviction based on a predicate later deemed invalid is invariably and automatically deemed prejudicial—even if the defendant would have been convicted of an offense of comparable and indistinguishable seriousness had the error existed at the time of the plea.

The majority makes a pass at the importance of case-specific inquiries by suggesting the government might move to raise the dismissed counts on remand. *See id.* at 17. That has it exactly backward. It is defendant's burden to establish prejudice *prior* to any vacatur of his conviction. And that burden can only begin to be satisfied by pointing right here and now to facts specific to defendant's case.

This plea was entered long ago. It was not the product of some primitive system of criminal justice. It was the valid outcome of a valid process. It was properly negotiated. Its terms were fairly arrived at. The conviction and sentence have been settled. They should be allowed to rest. The Supreme Court has commanded that given the important finality interests implicated by collateral review of procedurally defaulted claims, the prejudice inquiry is stringent, fact-intensive, and requires "*actual* and substantial disadvantage." *Frady*, 456 U.S. at 170. The majority disregards the Court's clear instruction across a myriad of contexts that structural error is the rare exception; fact-specific prejudice

22

inquiries are the rule. It subverts the parties' plea bargain and undermines the philosophy behind guilty pleas. And it creates a palpable tension with the *factual* innocence requirement articulated in *Bousley v. United States*, 523 U.S. 614 (1998).

The majority's decision is retroactivity with a vengeance. It undermines the criminal justice system's commitment to finality at every turn. Procedural defaults are meant to protect the finality of convictions. Now they are weakened years later. How many witnesses are no longer available? How much do they still recall? Not content with this assault on finality, the majority erodes the finality of guilty pleas as well, allowing one party to an agreement to back away from it and take whatever later benefits may drift its way. In so doing, the majority repositions not only the utilization of prosecutorial resources. It commits executive review generally to an ongoing retrospective, notwithstanding the demands that the commission of present crimes make upon our coordinate branch of government.

Retroactivity, of course, does have its place. The First Step Act is retroactive in its application, s*ee* First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, but in a manner carefully tailored to individual circumstances. What makes the majority's version of retroactivity so pernicious is that it applies irrespective of those circumstances, thereby undermining the primacy of individualized consideration in our system of justice.

Recognizing the naïve idealization of a perfect criminal justice system, factual inquiries yet insist that proceedings be practically grounded and, above all, fundamentally fair. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Again, the facts, had they been so much as consulted, are fatal to McKinney's case. The government would never have

23

dismissed the substantive Hobbs Act count had the Hobbs Act conspiracy count been anything but a wholly lawful predicate at the time of McKinney's plea. McKinney's undisputed conduct—discharging a firearm to threaten victims during a violent and dangerous robbery of a restaurant—lies at the heart of what Congress sought to criminalize through § 924(c). The real prejudice here is not to the defendant but to the public, which must suffer the consequences of the majority's ill-advised rule.

## II.

The Supreme Court has made clear that to establish the prejudice required to excuse procedural default, a habeas petitioner must show that given the "particular circumstances of [his] individual case," the error "worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170.[1] McKinney comes nowhere close.

## A.

A habeas petitioner must demonstrate "cause" and "actual prejudice" to excuse his procedural default. *See Wainwright*, 433 U.S. at 90–91. The Supreme Court explained what constitutes "actual prejudice" in *United States v. Frady*.

Inasmuch as the majority has all but ignored *Frady*, I am compelled, with apologies to the reader, to briefly traverse what should be familiar ground. The fact that this case

---

[1] Because this case concerns the showing of prejudice necessary to excuse a habeas petitioner's procedural default, *Frady* is the controlling standard. No one disputes that McKinney's conviction is now invalid given that *United States v. Davis*, 139 S. Ct. 2319 (2019), "applies retroactively to cases on collateral review." *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021); *see Schriro v. Summerlin*, 542 U.S. 348, 351–53 (2004) (explaining that "new substantive rules generally apply retroactively").

comes to us on collateral review is of salient importance, not just as another factor for the majority to toss into the hopper. The *Frady* Court began by "reaffirm[ing] the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"—*i.e.*, the plain-error standard. 456 U.S. at 166; *see Murray v. Carrier*, 477 U.S. 478, 493–94 (1986) ("The showing of prejudice required under *Wainwright v. Sykes* is significantly greater than that necessary under . . . 'plain error.'"). A more stringent collateral-review standard is appropriate because "postconviction collateral attacks" implicate society's interest in finality: the "respect" that "a final judgment commands." *Frady*, 456 U.S. at 164–65 ("Once the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted."). So to establish eligibility for collateral relief on a procedurally defaulted claim, the petitioner "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 167–68.

*Frady* and subsequent cases drive home the point that actual prejudice is a strict, fact-specific standard. The *Frady* Court explicitly rejected the idea, now embraced by the majority, that an error could "amount[] to prejudice *per se*, regardless of the particular circumstances of the individual case." *Id.* at 170. Rather, the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Id.*; *see also Carrier*, 477 U.S. at 494 (quoting this standard); *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) (same). The Court then conducted a fact-specific inquiry and concluded that given "the strong

uncontradicted evidence . . . in the record," there was "no substantial likelihood" of a different result; the petitioner would have been convicted regardless of the error. *Frady*, 456 U.S. at 172–74. So there was no actual prejudice. *Id.* at 175.

Thus, for a habeas petitioner to establish actual prejudice, he must show, based on the specific facts of his case, that the error caused him an "*actual*" and "*substantial*" disadvantage. He must show that there is a "substantial likelihood" that he would have received a better outcome but for the error. The majority all but ignores this standard. The effect is to relegate Supreme Court decisions to no more than provisional status.

B.

Given the uncontested facts of McKinney's case, there is no substantial likelihood that he would be in a better position but for the subsequently invalidated, conspiracy-predicated § 924(c) charge. There is no way he can show that being charged with and pleading guilty to this later invalidated count "worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170. The majority, fleeing the facts, does not come close to establishing that he could.

McKinney was originally charged by a grand jury with Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and a § 924(c) count predicated on the substantive offense. McKinney has never denied that he committed these offenses; his "offense conduct was uncontroverted, and it remains uncontroverted to this day." *McKinney v. United States*, No. 1:16-cv-00149-MR, 2020 WL 475196, at *6 (W.D.N.C. Jan. 29, 2020). The government agreed to dismiss the substantive robbery count and § 924(c) count predicated on it *only* if McKinney pleaded guilty to the conspiracy count

26

and a conspiracy-predicated § 924(c) count. McKinney does not dispute that if the court had found the conspiracy-predicated § 924(c) count invalid, the government "would not have dismissed" the substantive robbery count or the § 924(c) count predicated on it. *McKinney*, 2020 WL 475196, at \*5. So even if McKinney had not faced the invalid conspiracy-predicated § 924(c) count, he would have faced an equivalent one that would have carried the same statutory penalties and subjected him to the same Sentencing Guidelines. *See* 18 U.S.C. § 924(c)(1)(A)(iii); U.S.S.G. § 2k2.4(b).

The majority suggests fleetingly that the defendant would not have pleaded guilty. Maj. Op. at 14. This is incorrect. Given these facts, there is no substantial likelihood that McKinney "would not have pleaded guilty" to the § 924(c) count predicated on substantive Hobbs Act robbery had the conspiracy-predicated § 924(c) count been unavailable. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The prejudice inquiry in guilty-plea cases "depend[s] in large part on a prediction" about the "likely . . . outcome at a possible trial" judged "objectively, without regard for the idiosyncrasies of the particular decisionmaker." *Id.* at 59–60 (quotation marks omitted). Given the objective nature of the inquiry, the majority's assertion that McKinney refused to plead guilty at two plea hearings misses the point. *Objectively*, McKinney's prospects at trial were bleak given the overwhelming, undisputed evidence that he did in fact fire a gun while committing a Hobbs Act robbery. Given that evidence—and the downward adjustment for accepting responsibility that he only could receive by pleading guilty, *see* U.S.S.G. § 3E1.1—there is no substantial likelihood that McKinney would not have pleaded guilty.

27

That same evidence would have left McKinney dead in the water at trial. Had McKinney taken his chances before a jury, the government would have shown that he stormed a restaurant armed with a handgun, ordered a woman into the restaurant at gunpoint, fired a warning shot to coerce the manager's compliance, and was found hiding in the nearby bushes. There is no substantial likelihood that a jury would have acquitted him of using a firearm during and in relation to a Hobbs Act robbery.

Please consider the facts. Whether he would have pleaded guilty or gone to trial, one way or another McKinney would have been convicted of the § 924(c) count predicated on his violent and undisputed Hobbs Act robbery. He would have faced the same statutory penalties and Sentencing Guidelines range as he did for the invalid conspiracy-based § 924(c) charge and, in all likelihood, his sentence would have been the same as or worse than the one he actually received. *See McKinney*, 2020 WL 475196, at *6. Because the error did not work to McKinney's "*actual* and substantial disadvantage," he has shown no prejudice that would excuse his procedural default, *Frady*, 456 U.S. at 170, and courts should respect his long and fairly settled federal conviction and sentence.

### III.

As John Adams famously said, "facts are stubborn things." To the majority, facts are not only stubborn, but scary. Ignoring the facts, the majority devises a per se rule that there is prejudice whenever a defendant is convicted under a predicate that is later ruled invalid. Under such a rule, a court need not consider the facts of the case to reverse a conviction; it need only examine the later status of the predicate offense at issue. In short, the majority concocts a legal test in which facts are irrelevant. Imagine a terrifying or

28

heartbreaking scene through the eyes of the victims. Then tell yourself that because the guilty plea from that tragedy rested on a Hobbs Act conspiracy (rather than substantive) predicate, the whole conviction must, no questions asked, be set aside.

A.

This should not be. The majority's creation of a per se rule of prejudice defies the Supreme Court's repeated instruction that structural errors—which result in "automatic reversal" without any showing of actual prejudice—are "highly exceptional." *Greer v. United States*, 141 S. Ct. 2090, 2099–2100 (2021) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999), and *United States v. Davila*, 569 U.S. 597, 611 (2013)). Rather, across a variety of contexts, "the 'general rule' is that 'a constitutional error does not automatically require reversal of a conviction'": Errors must cause prejudice, which is a factual matter that depends on the defendant showing specifically how the error affected him. *Id.* at 2099 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)).

This general rule makes sense. The hallmark of structural error is that defendants get their convictions reversed no matter how undeserving they are or how violent their acts. This case is Exhibit A: McKinney's violent armed robbery was exactly what Congress wanted to punish through § 924(c). Conversely, the great advantage of factual prejudice determinations is that they allow courts to inquire into the strength of the case and make individualized determinations as to whether the defendant would have been convicted even had no error been made. But the majority ignores these factors, electing instead to forgo tailored factual analysis in favor of an ill-fitting, precedent-defying per se rule.

29

B.

Plain error and procedural default inquiries both underscore the intensive factual nature of the prejudice inquiry. It is therefore particularly instructive to consider what the Supreme Court has said about prejudice being a factual inquiry in the context of plain-error review. Plain error applies on direct review of errors that were not raised in the district court. *See United States v. Olano*, 507 U.S. 725, 731 (1993); Fed. R. Crim. P. 52(b). Under the *Olano* framework, a court may only grant relief if the defendant shows (1) there was an error; (2) that was "plain"; (3) that affected "substantial rights"—"which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different"—and (4) the court concludes "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2096–97 (quotation marks omitted). The defendant bears the "difficult" burden of establishing all four requirements. *Id.* at 2097 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

A note to the majority: The Supreme Court has said time and again that the third and fourth *Olano* prongs are fact-specific inquiries. With respect to the third prong (prejudice), the Supreme Court has found no reasonable probability of a different outcome even where the jury was not instructed on an element of the crime. *See id.* at 2097–98. *Greer* considered whether the defendant was prejudiced by the district court's failure to instruct the jury that, in a felon-in-possession case, the government must prove not only that the defendant knew he possessed a firearm, "but also that *he knew he was a felon*." *Id.* at 2095; *see Rehaif v. United States*, 139 S. Ct. 2191, 2199–2200 (2019). The Court

30

"consider[ed] the entire record" and concluded that because Greer had been convicted of multiple felonies, stipulated to that fact at trial, and had never argued that he did not know he was a felon, there was no "reasonable probability that a jury would have acquitted him" "but for the *Rehaif* error." *Greer*, 141 S. Ct. at 2097–98. Despite the error's seriousness, the defendant was not, given the facts, prejudiced. *Id.*

With respect to the fourth prong ("fairness"), both the Supreme Court and this Court have repeatedly stressed the fact-specific nature of the inquiry. In *Puckett*, the Supreme Court explained that this prong "is meant to be applied on a case-specific and fact-intensive basis." 556 U.S. at 142. Accordingly, the Court considered the facts of the defendant's case and concluded that the error did not "compromise the public reputation of judicial proceedings." *Id.* at 143. And *Puckett*'s characterization of this prong as fact-intensive has been repeatedly reaffirmed. *See, e.g.*, *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1909 (2018); *United States v. Edgell*, 914 F.3d 281, 290–91 (4th Cir. 2019); *United States v. Heyward*, 42 F.4th 460, 471 (4th Cir. 2022).

The lessons of the Supreme Court's plain-error precedents—that prejudice is fact-specific and per se rules are extraordinary—apply *a fortiori* to the "actual prejudice" inquiry we apply on collateral review of procedurally defaulted claims. As noted, because collateral review implicates "society's justified interests in the finality of criminal judgments," habeas petitioners attempting to show actual prejudice "must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166, 175; *see United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) ("[T]he 'showing of prejudice required' to overcome procedural default on collateral review 'is significantly

greater than that necessary' to establish plain error on direct review." (quoting *Carrier*, 477 U.S. at 493–94)). Because "actual prejudice" is a more demanding standard than plain-error prejudice, we should be even more attentive here to specific facts and even less willing to adopt per se rules. Neglect of Supreme Court precedent is not an option.

C.

The Supreme Court has also eschewed per se rules of prejudice and emphasized its factual nature in other contexts.

First, in *Neder v. United States*, the Supreme Court applied the harmless-error standard to a district court's omission of a crime's materiality element from its jury instructions. 527 U.S. at 4. The Court rejected the argument that this error was structural, noting that omitting an element does not "*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence*." Id.* at 9. Rather, the Court concluded that given the facts of the case, it was "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 15 (quotation marks omitted). "The evidence supporting materiality was so overwhelming" that "no jury could reasonably find" otherwise, so the error was harmless. *Id.* at 16. *Neder* is especially instructive because the Court found no prejudice even when it was the *government's* burden to prove the lack of prejudice *beyond a reasonable doubt*; here, by contrast, it is *McKinney's* burden to show *actual and substantial* prejudice. *Compare Neder*, 527 U.S. at 7, *with Frady*, 456 U.S. at 170.

Second, in ineffective-assistance-of-counsel cases, the Supreme Court generally requires the defendant to show that "there is a reasonable probability that, but for counsel's

32

unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). This prejudice determination requires courts to "consider the totality of the evidence before the judge or jury." *Id.* at 695. Consistent with the Court's general approach to prejudice inquiries, prejudice is presumed only in the most exceptional cases. *See id.* at 692 (noting "state interference with counsel's assistance" and "actively represent[ing] conflicting interests" as circumstances where prejudice is presumed (quotation marks omitted)). But those cases aside, ineffective-assistance claims "are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693.

Finally, the Supreme Court's test for whether a *Brady* violation has occurred incorporates a factual prejudice inquiry. *Brady* is violated when the State suppresses evidence favorable to the accused and that evidence is "material"—*i.e.*, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quotation marks omitted); *see Brady v. Maryland*, 373 U.S. 83 (1963). This inquiry is fact-intensive: "[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290 (quotation marks omitted). And the Court has, in fact, found that suppressed, favorable evidence was immaterial. *See, e.g.*, *id.* at 296.

* * *

Sooner or later, it must occur to my friends in the majority that they are swimming against a powerful tide. In case after case, context after context, the Supreme Court has

33

reaffirmed the fact-intensive nature of prejudice. *See, e.g.*, *Frady*, 456 U.S. at 168–70 (collateral review of procedurally defaulted claims); *Greer*, 141 S. Ct. at 2097–98 (plain error), *Neder*, 579 U.S. at 15–17 (harmless error), *Strickland*, 466 U.S. at 694 (ineffective assistance), *Strickler*, 527 U.S. at 290 (*Brady*). Through these cases, the Supreme Court has firmly rooted our judicial system in the foundational principle that courts will not disturb convictions unless there is a factual showing of prejudice. But the majority ignores this caselaw and the need for individualized consideration of defendants that flows from it. Facts look to real world effects. Justice is instead meted out by the majority under an abstract rule that bundles the least deserving with the most. While some countries may favor this indiscriminate approach, ours looks person-by-person in an effort to balance individual rights with the need for public safety.

## IV.

As if all this were not enough, the majority subverts the parties' plea bargain and undermines the entire philosophy behind guilty pleas. "Indiscriminate[ly]" allowing prisoners to escape their guilty pleas through collateral attacks on their sentences "would eliminate the chief virtues of the plea system"—"speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). A plea *bargain* is exactly that: an exchange of benefits between the defendant and the government. The government conserves judicial and prosecutorial resources and obtains the certainty that a guilty and often dangerous criminal receives punishment. The defendant receives some certain present benefits—for instance, acceptance-of-responsibility sentencing adjustments and, crucially, the dismissal of additional charges that the government could have proved at trial. In return, the

34

defendant relinquishes the possibility of acquittal at trial *and* the possibility that he might benefit from some future legal development in his favor.

That is exactly what happened here. McKinney received significant present benefits in exchange for pleading guilty. Most notably, despite the overwhelming evidence of McKinney's guilt, the government dismissed the substantive Hobbs Act robbery count—thereby likely reducing his potential prison sentence. McKinney, in return, pleaded guilty to the Hobbs Act conspiracy count and a § 924(c) count predicated on that offense. In so doing, McKinney waived his rights to appeal. By pleading guilty, McKinney voluntarily and intelligently accepted that he would not benefit from any subsequent legal development invalidating his conspiracy-predicated § 924(c) count unless he could overcome the procedural-default bar on collateral review. This affirmative waiver went far beyond the typical case of procedural default in which a party inadvertently fails to contest an issue.

The majority protests that it is inappropriate to consider dismissed counts as part of the prejudice inquiry in the plea-bargaining context, suggesting that no precedent permits a court to consider such counts. Maj. Op. at 15. Respectfully, that has it exactly backwards: It is telling that the majority cites no binding or persuasive case for the proposition that it is illegitimate to consider dismissed counts as part of the factual prejudice inquiry. That inquiry, as explained above, asks whether an error worked to a defendant's "*actual* and substantial disadvantage." *Frady*, 456 U.S. at 170. That standard does not limit our consideration of whether the defendant would have pleaded guilty to an identical § 924(c) offense predicated on a dismissed count. Indeed, as a matter of common sense, the

35

availability of such a dismissed count to serve as a predicate offense at the government's disposal is highly relevant to the defendant's decision to enter the plea that he did.[2]

The majority subverts the parties' bargain and grants McKinney a windfall. Despite McKinney being indisputably guilty of (1) Hobbs Act robbery, (2) using a firearm during the robbery, and (3) conspiracy to commit that robbery, the majority lets him skate with just the later invalidated conspiracy conviction. All this despite the government only agreeing to dismiss (1) and (2) if McKinney pleaded guilty to conspiracy *and* the attendant § 924(c) charge.

The majority again compromises the value of finality—that eventual and essential point of termination in any criminal justice system that allows both society and the individual a chance to pivot and look forward. At some point, the law may fairly and properly be deemed conclusive, and the light of future possibility let in. Courts typically safeguard the finality of guilty pleas by requiring defendants to "show a reasonable probability that, but for the error, [the defendant] would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (applying reasonable-probability standard to defendant seeking to withdraw guilty plea because of court's plain error); *Hill*,

---

[2] Once again, the majority flees the facts. It relies on the Eighth Circuit's brief opinion in *Jones v. United States*, 39 F.4th 523 (8th Cir. 2022), to support a finding of prejudice here. To the extent that *Jones* did not consider whether a dismissed count could serve as a predicate offense to sustain the defendant's § 924(c) conviction, that was incorrect. To the extent the majority implies that any circuit overrides the clear teachings of the Supreme Court, I would respectfully suggest that is incorrect as well. To ascertain whether Jones and McKinney were prejudiced, a court must consider all the particulars of the case, as trial courts routinely do. It was up to the trial court in the first instance to determine the relevance of any particular factor, including any dismissed counts, to the entire prejudice analysis, as it did here. *See* J.A. 143–44.

474 U.S. at 59 (same with respect to withdrawing guilty plea because of ineffective assistance of counsel). By granting McKinney relief despite his inability to show a reasonable probability that he would not have pleaded guilty—much less any actual and substantial disadvantage—the majority disregards the heightened finality interests here. *See Frady*, 456 U.S. at 165–66, 170.

The government was thus stripped of the benefit of its bargain. It is no answer that the majority implies that the government could move to reinstate the counts that it dismissed pursuant to McKinney's plea agreement. *See* Maj. Op. at 17. The statute that allows the government to move to reinstate dismissed counts only permits it to do so after the guilty plea has been "vacated on the motion of the defendant." 18 U.S.C. § 3296(a)(3). The case is then reset to square one and the virtue of finality is thereby undermined. The majority thus allows the vacatur of McKinney's guilty plea and the attendant subversion of the parties' bargain—all without a showing of actual prejudice.

V.

The majority's per se prejudice exception is also in significant tension with *Bousley v. United States*, 523 U.S. 614 (1998), and the general rule of procedural default. A habeas petitioner can overcome procedural default in either of two ways: by showing cause and actual prejudice or by showing actual innocence. *Id.* at 622. In the actual-innocence context, the Supreme Court has instructed that "actual innocence means factual innocence, not mere legal insufficiency." *Id.* at 623 (quotation marks omitted). Thus, to determine whether a petitioner meets this "very narrow exception," *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992), the court will look at "all the evidence . . . even if that evidence was not

37

presented during petitioner's plea colloquy." *Bousley*, 523 U.S. at 623–24. The inquiry completely turns on the facts of the case. So *Bousley* is yet another entry in the catalog of cases where the Supreme Court has warned us away from per se rules and instead commanded a fact-intensive analysis. The facts, of course, point to McKinney's guilt at every count and corner.

## VI.

The majority pronounces a novel per se rule in disregard of the Supreme Court's repeated instructions. Strive as the majority undoubtedly does to listen to the Supreme Court, I am afraid it has misheard. Its per se pronouncements ignore "the hierarchy of the federal court system created by the Constitution and Congress." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam).

Rather than rush to per se rules, we should walk slowly, lest we "riddle the cause and prejudice standard" with ill-advised exceptions. *Dretke v. Haley*, 541 U.S. 386, 394 (2004). In fact, "it is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary." *Id*. Such a warning was meant to ward off just such decisions as the majority has rendered here.

Pronouncing broad new rules makes no sense in the fraught and salient context of § 924 crimes and Congress's attempts to address the scourge of gun violence afflicting this country. *See Berkemer v. McCarty*, 468 U.S. 420, 446 (1984) (Stevens, J., concurring) (underscoring that principles of "restraint grow[] in importance the more problematic" the issue is). Given the Supreme Court's emphasis upon Congress's goal of keeping the public

safe from violent crimes committed with firearms, we should not lightly uproot the sentences of those convicted under § 924(c). To declare an entire category of § 924(c) convictions per se prejudicial ignores the facts of each case to the undeserved benefit of some of society's most violent offenders.

I respectfully dissent. I am left only with the hope that basic errors of transmission between the Supreme Court and the courts of appeals will be more limited in future cases.