**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-6698**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

STANISLAV STEVEN YELIZAROV,

Defendant – Appellant.

**No. 23-4742**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

STANISLAV STEVEN YELIZAROV,

Defendant – Appellant.

Appeals from the United States District Court for the District of Maryland, at Baltimore. Ellen Lipton Hollander, Senior District Judge.  (1:15-cr-00261-ELH-1; 1:17-cv-01012-ELH)

Argued:  March 18, 2025                               Decided:  June 23, 2025

Before HEYTENS and BERNER, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────

Affirmed in part and dismissed in part by published opinion. Judge Gibney wrote the opinion, in which Judge Heytens and Judge Berner joined.

───────────

**ARGUED:** Meghan Skelton, SKELTONLAW, LLC, Cabin John, Maryland, for Appellant. Paul E. Budlow, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, United States Attorney, David C. Bornstein, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

2

GIBNEY, Senior District Judge:

On January 16, 2013, Stanislav "Steven" Yelizarov, the appellant in this matter, robbed a jewelry store after a series of extremely serious and shocking events. He received a thirty-year sentence for two offenses: kidnapping and conspiracy to commit a Hobbs Act robbery. For the reasons indicated below, we affirm in part and dismiss in part.

This case comes to us in an extremely complicated procedural posture played out over eight years. During this time, Yelizarov informally agreed to two plea agreements and entered the second one before the district court, he filed two motions under 28 U.S.C. § 2255, he was sentenced twice, and three judges decided relevant parts of two underlying cases. From the myriad relevant events, Yelizarov presents two arguments on appeal: (1) that his trial attorney rendered ineffective assistance of counsel during plea negotiations; and (2) that his sentence is procedurally and substantively unreasonable. As to the first claim, because Yelizarov was not prejudiced by his counsel's alleged deficiencies, the district court did not err in declining to find that he received ineffective assistance of counsel. As to the second, Yelizarov's plea agreement contained a valid waiver of appeal provision, precluding Yelizarov from appealing the reasonableness of his sentence.

I.

A.

Between 2012 and 2013, Yelizarov led a conspiracy to commit armed robbery of a jewelry store. J.A. 68. In July 2012, Yelizarov and his co-conspirators broke into the home of an acquaintance and stole at least ten rifles and shotguns, among other items, to prepare for the jewelry store heist. *Id.* During that robbery, Yelizarov bound the homeowner and

3

pistol whipped him. *Id.* Then, on Christmas Day 2012, Yelizarov and his crew burglarized a home in Baltimore and stole another shotgun and handgun. J.A. 69.

On January 16, 2013, the day of the robbery, Yelizarov and others impersonated police officers with a light bar and sound speaker to pull over an employee of the jewelry store. *Id.* Yelizarov and his men confronted the employee, put a bag over his head, bound him, and stuffed him in the trunk of his own car. J.A. 70. The crew then drove the employee's car to a remote location where they removed the employee from the trunk, brandished their weapons at him, and threatened his family in exchange for the store's alarm code. J.A. 20, 23. While two co-conspirators stayed with the employee and held him at gunpoint, Yelizarov and another co-conspirator used the employee's car to drive to the jewelry store, break in, and steal items worth over $500,000. J.A. 70. After the heist, the men returned to the employee's location, put him back into the trunk of his car, drove him to another location, and abandoned the car with the employee still in the trunk. *Id.*

## B.

A grand jury indicted Yelizarov for various crimes arising from the events described above.[1] Yelizarov signed an initial plea agreement in October 2015. J.A. 184. In exchange

---

[1] The indictment leading to this case was a six-count superseding indictment against Yelizarov and six co-defendants for (1) conspiracy to affect commerce by robbery ("Hobbs Act conspiracy"), in violation of 18 U.S.C. § 1951(a) (Count One); (2) affecting commerce by robbery ("Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951(a) & 2 (Count Two); (3) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) (Count Three); (4) kidnapping, in violation of 18 U.S.C. § 1201(c) & 2 (Count Four), (5) carjacking in violation of 18 U.S.C. § 2119(1) & 2 (Count Five); and (6) use, carry, and brandish a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i)-(2) & 2 (Count Six). J.A. 18–29.

for pleading guilty to conspiracy to commit Hobbs Act robbery, kidnapping, and brandishing a weapon during a crime of violence, the government promised not to seek a sentence above 40 years. J.A. 187, 193. The plea agreement also represented that the "State's Attorney's Office for Baltimore County w[ould] pursue no further criminal charges arising out of the events described in the factual stipulation attached" to the initial plea agreement. J.A. 193. The "factual stipulation" detailed the June 2012 burglary of the acquaintance's home, the Christmas Day burglary of the other home, and the kidnapping, carjacking, and robbery of the jewelry store. J.A. 198–200.

In November 2015, after Yelizarov accepted the plea agreement but before entering his guilty plea, the prosecutor told Yelizarov's attorney, Robert Waldman, that the government suspected Yelizarov had committed an unrelated murder in 2009. J.A. 184. Waldman received little information from the government about the evidence tying Yelizarov to the murder, only learning that someone had killed a shop owner in his store on Reisterstown Road around Christmas. J.A. 184–85. Waldman asked the government whether it would consider a package deal to resolve the robbery and kidnapping charges with the murder, but the government declined. J.A. 185.

The next day, Waldman told Yelizarov about the potential murder charges and the few details that Waldman had learned. *Id.* Waldman told Yelizarov that the government felt they had a "very strong case." J.A. 270. Yelizarov, however, already knew about the 2009 murder, later testifying that "[a]ll of Pikesville, all of Baltimore knew" about it. J.A. 354. When Waldman asked Yelizarov whether he wanted Waldman to pursue a package deal to combine the murder with the robbery charges, Yelizarov told Waldman that the

5

government could not tie Yelizarov to the murder or prove its case. J.A. 185. Waldman did not discuss the murder again with either Yelizarov or the government. *Id.* After this meeting with Waldman, Yelizarov decided he wanted "a second opinion[]" on his decision to plead guilty, and the district court postponed the plea hearing. *Id.*

While Yelizarov was reconsidering the plea, Waldman negotiated a better deal with the government. *Id.* As in the first agreement, in the second plea agreement Yelizarov agreed to plead guilty to the Hobbs Act conspiracy, kidnapping, and brandishing charges. But in the second agreement, the parties agreed to a sentence of 360 months that ran concurrent to a state sentence that Yelizarov was already serving.[2] J.A. 63. Because the agreement arose under Rule 11(c)(1)(C), it bound the Court not to go above the agreed upon sentence if it accepted the plea.[3]

The new agreement again included a provision which represented that the "State's Attorney's Office for Baltimore County w[ould] pursue no further criminal charges arising out of the events described in the factual stipulation attached" to the plea agreement. J.A. 64. That factual stipulation, like the first one, included facts about the two home burglaries,

---

[2] As these negotiations were occurring, Yelizarov was serving a 15-year state sentence for a different robbery. J.A. 230–31.

[3] Federal Rule of Criminal Procedure 11(c)(1)(C) permits a plea agreement to specify an "appropriate disposition of the case," which the district court must impose if it accepts the agreement. We refer to this as a "Type-C" plea.

6

the kidnapping, the carjacking, and the jewelry store robbery.  J.A. 68–70.  It did not include any facts about a murder.  J.A. 68–71.

At his plea hearing, United States District Court Judge J. Frederick Motz underscored the scope of the conduct covered by the agreement.  Judge Motz carefully discussed the terms of the plea with Yelizarov.  J.A. 30–56.  Yelizarov affirmed that he voluntarily agreed to plead guilty.  J.A. 38–39.  During the plea hearing, with Yelizarov under oath, the government and the district court emphasized that the agreement prevented the government from prosecuting Yelizarov further for crimes mentioned in the stipulation of facts:

| | |
|---|---|
| [THE GOVERNMENT]: | Additionally, Your Honor, I'd just like to make sure the defendant is advised of some of the provisions of the plea agreement contained on Page 8 under the obligations of the United States Attorney's Office.  Significantly, that the government has agreed to dismiss open counts, but also that the relevant conduct, which is the subject of this sort of July 2012 armed home invasion, the government has agreed that, the Baltimore County State Attorney's Office has agreed that no charges will be pursued as a result of that, and that this plea agreement covers the conduct in the state and that – |
| THE COURT: | They are very important.  Essentially, this ties up everything that happened.  Do you understand that? |
| THE DEFENDANT: | I understand. |
| THE COURT: | Here and in the county.  Thank you. |
| [THE GOVERNMENT]: | Everybody that happened – |

7

| | |
|---|---|
| THE COURT: | That day. |
| [THE GOVERNMENT]: | – that's in the plea agreement and that's in the stipulated facts. |
| THE COURT: | Thank you. Everything that happened as set forth in the stipulated facts.  Do you understand that? |

J.A. 45–46.  The government then read a summary of the stipulated facts, which did not

include the 2009 murder.  J.A. 51–54.  The Court permitted the government to orally advise

Yelizarov that the covered facts included the July 2012 robbery of the acquaintance's home

for guns, the December 25, 2012, robbery of another home for guns, and the January 16,

2013, robbery of the jewelry store.  *Id*.  Yelizarov admitted that he participated in those

events.  J.A. 55.

At the time of the second plea agreement, the law was uncertain about Count Six,

the charge of brandishing a firearm during a crime of violence.[4]  Recognizing this

uncertainty, the second plea agreement also said that, "in the event that either Count One

[the Hobbs Act conspiracy charge], Count Four [the kidnapping charge], or both, are

subsequently determined to not be predicates for Brandishing a Firearm in Relation to a

Crime of Violence, in violation of 18 U.S.C. § 924(c) under Count Six, the Court, upon

resentencing of the Defendant, will impose a sentence of three hundred sixty (360) months'

of incarceration as to Count Four."  J.A. 63.  During the plea hearing, Judge Motz also

---

[4] The uncertainty was whether kidnapping or Hobbs Act conspiracy qualified as a predicate "crime of violence" for the charge in Count Six of brandishing a firearm during a crime of violence.  Ultimately, it was determined that they did not serve as a crime of violence and could not form the basis of the brandishing charge.

emphasized the length of the sentence that Yelizarov agreed to in his Type-C plea agreement. Specifically, Judge Motz told him that he would get a 360-month sentence even if the brandishing charge was dismissed. J.A. 43–44. The Court said:

> [Y]ou've agreed with the government, essentially, that 360 months of incarceration is the appropriate sentence in this case and is reasonable. . . . [I]f either Counts One, Four, [] or both are subsequently determined to be not predicates for brandishing a firearm, I will impose a sentence of 360 months, in any event. You and the government, essentially what you agreed upon is that 360 months is the right sentence.

*Id* at 43–44.

Finally, the Court orally went over with Yelizarov the written provision in his plea agreement that he was waiving his right to appeal his conviction. J.A. 44.

After finishing the plea colloquy, the court found that there was a factual basis for the plea, that Yelizarov was fully competent to enter the plea, and that Yelizarov entered the plea freely and voluntarily. J.A. 50. Pursuant to the agreement, Judge Motz sentenced Yelizarov to a total of 360 months' incarceration, consistent with the Type-C plea agreement. J.A. 87, 93. The sentence consisted of 240 months' imprisonment for the Hobbs Act conspiracy charge; 276 months' imprisonment on the kidnapping charge, to run concurrently with the Hobbs Act conspiracy charge; and 84 months' imprisonment on the brandishing charge, to run consecutively to the other two charges. *Id*. at 87, 93. The court also ordered that the federal sentence run concurrently with Yelizarov's current state sentence. J.A. 93.

9

C.

Approximately two months after the sentencing for the robbery, a grand jury indicted Yelizarov for a separate robbery and murder that occurred in December 2009. J.A. 142. Yelizarov pleaded guilty to the murder without a plea agreement before United States District Court Judge Marvin J. Garbis on September 8, 2017.[5] *Id.* Judge Garbis sentenced Yelizarov to twenty years' imprisonment "consecutive to the sentences [Yelizarov] is now serving which means that, in effect, he has to serve a 50-year sentence before he gets out." J.A. 523.

II.

A.

In the midst of the proceedings in the murder case, Yelizarov filed a 28 U.SC. § 2255 motion to vacate, set aside, or correct the plea and sentence in the robbery case. J.A. 99–104. Yelizarov asked the district court to vacate his conviction and sentence in the robbery case because Waldman had provided ineffective assistance of counsel during the plea agreement process. *Id.* Essentially, Yelizarov argued that Waldman had failed to advise him of the risk of the murder prosecution, had not investigated the threatened murder charge, had inaccurately told him that the robbery plea would end the charges against him, and that he would not receive a sentence longer than thirty years. J.A. 103, 106. He said

---

[5] Before sentencing in the murder case, Yelizarov filed a pro se motion to vacate his guilty plea and to appoint new counsel, claiming that counsel "had forced him 'under duress' to plead guilty." J.A. 142–43; J.A. 486. After an evidentiary hearing, the district court denied the motion to vacate the plea. J.A. 486. Yelizarov appealed the decision, which we affirmed. J.A. 487.

10

that if he had known what he faced on the murder charge, he would not have pleaded guilty to the robbery charges. J.A. 106. The denial of this motion is on appeal in this case.[6]

In January and February 2022, United States District Court Judge Ellen Hollander[7] conducted an evidentiary hearing on the § 2255 motion. The primary witnesses were Yelizarov and his former attorney, Waldman. As might be expected, they offered different versions of what happened. Waldman said that he had told his client about the possible murder charge, that the client knew about the murder and believed he could not be implicated, that Waldman renegotiated the plea agreement to Yelizarov's advantage, and that Yelizarov took the plea voluntarily. J.A. 268–70, 276. Yelizarov admitted that he read the second plea agreement before he signed it, that he read the statement of facts attached to them, and that neither the plea agreement nor the statement of facts mentioned a murder. J.A. 369, 372–74. Consistent with his petition, however, Yelizarov claimed ignorance about his enhanced jeopardy and said he would not have pleaded guilty if he had known the risks. J.A. 324, 335. Judge Hollander questioned Yelizarov's credibility,

---

[6] Yelizarov also filed a supplemental § 2255 motion asking the court to vacate his § 924(c) conviction because the United States Supreme Court and this Court had since ruled that conspiracy to commit Hobbs Act Robbery and kidnapping do not qualify as predicate crimes of violence to support a § 924(c) conviction. J.A. 108–09. On May 11, 2020, the district court vacated Yelizarov's § 924(c) conviction and directed a new sentencing hearing. J.A. 135–36. He appeals his resentencing, discussed *infra*.

[7] Judge Motz retired after sentencing Yelizarov in the robbery case. J.A. 229. Judge Hollander presided over the § 2255 motion and the resentencing. *Id.*

11

accepted Waldman's version of the events, and denied the motion.  J.A. 459–515.  We affirm the ruling, because any alleged errors by counsel did not prejudice the defendant.

                                           B.

"In reviewing a district court's denial of a § 2255 motion, we review factual findings for clear error and legal conclusions" *de novo*.  *United States v. Slocum*, 106 F.4th 308, 312 (4th Cir. 2024).  "[T]o the extent that the district court made credibility determinations" pertinent to witness testimony in the § 2255 analysis, this Court "must accept those findings unless clearly erroneous."  *United States v. MacDonald*, 911 F.3d 723, 786 (4th Cir. 2018).

The Sixth Amendment "entitles criminal defendants to the 'effective assistance of counsel.'"  *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).  This right extends to all "critical stages of a criminal proceeding."  *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quotations and citations omitted) (explaining that the right applies, among other stages, to plea negotiations and "the entry of a guilty plea").  For a defendant to succeed on an ineffective assistance of counsel claim, the defendant must show both that: (1) the attorney's performance "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the defendant suffered prejudice such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong").  *Strickland*, 466 U.S. at 688, 694.

Though a § 2255 petitioner claiming ineffective assistance of counsel must satisfy both prongs to prevail, the court "need not determine whether counsel's performance was

12

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

To satisfy the prejudice prong, a defendant attacking a guilty plea must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Additionally, "if a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice 'was corrected by the trial court at the Rule 11 hearing,' then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." *United States v. Mayhew*, 995 F.3d 171, 179–80 (4th Cir. 2021) (quoting *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995)). Generally, a court should dismiss a claim in a § 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy. *See United States v. McNeil*, 126 F.4th 935, 946 (4th Cir. 2025); *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

Even if Waldman provided deficient representation in this matter, no credible contemporaneous evidence exists that, but for Waldman's deficient representation, Yelizarov would have instead chosen to go to trial instead of entering a guilty plea.

13

Although Yelizarov and Waldman gave conflicting testimony, the district court did not find credible Yelizarov's self-serving testimony that he would not have pleaded guilty but for Waldman's purported incorrect advice. J.A. 501–02.

Before learning about the potential murder charges, Yelizarov originally signed a plea that allowed the government to ask for up to 40 years' incarceration at sentencing. Then, before entering that plea, Waldman learned from the government, and relayed to Yelizarov, that the government suspected Yelizarov in a 2009 murder. Waldman gave the details of the murder that he knew to Yelizarov and asked whether Yelizarov wanted Waldman to pursue a global plea on both the robbery and the murder charges. Instead of asking Waldman about his options surrounding a potential murder charge, however, Yelizarov told Waldman that the government would not be able to tie him to the murder or prove their case, and he indicated that he did not want Waldman to pursue a global resolution of the charges on the robberies and the murder. Thus, insofar as Yelizarov claims prejudice because he rather would have gone to trial when Waldman did not investigate the murder or negotiate a global plea, Yelizarov himself made the decision to plead guilty under the second plea agreement after (1) learning that the government suspected him for the 2009 murder; (2) hearing the details that Waldman knew about the murder, including that the government felt it had a "strong case;" and (3) telling Waldman that he did not want Waldman to investigate the murder further or negotiate a global plea. J.A. 270. Based on Waldman's more credible testimony, Yelizarov intended to plead guilty and avoid trial in the robbery case, even after he knew about the potential murder charges.

14

Regarding prejudice due to the second plea's clause regarding further prosecutions, Yelizarov admitted at the evidentiary hearing that he read both the plea agreement and the statement of facts before he signed them, and that neither the plea agreement nor the statement of facts mentioned the murder. Waldman also testified that he told Yelizarov that the second plea agreement did not preclude the government from pursuing the 2009 murder. Still, Yelizarov chose to plead guilty rather than proceed to trial.

Further, right before Yelizarov entered his guilty plea, Judge Motz and the government specifically highlighted that the plea provision prevented the government from pursuing additional charges on conduct listed in the statement of facts. Yelizarov acknowledged under oath that he understood that the provision limited the government from pursuing future prosecutions for conduct within the statement of facts. The district court, therefore, corrected any misunderstanding Yelizarov had when it clarified the terms of the plea agreement. And there is no evidence in the record that Yelizarov expressed any surprise, asked to speak with his attorney, or took any other action to indicate that, at any point, he thought the plea agreement precluded charges on the 2009 murder or that he premised his guilty plea on the understanding that the second plea agreement included a global resolution of every possible future charge against him for any crime. Yelizarov, therefore, cannot "show the necessary causal link between counsel's error and his decision to plead guilty" to demonstrate that Waldman's conduct prejudiced him. *Mayhew*, 995 F.3d at 180.

In sum, no contemporaneous evidence exists that Yelizarov would have pursued trial rather than plead guilty but for any of Waldman's alleged deficiencies. Yelizarov,

15

therefore, cannot satisfy the prejudice prong of the *Strickland* test. Because he fails the prejudice prong, we do not need to analyze *Strickland*'s performance prong and decline to do so.

III.

In addition to his motion to vacate for ineffective assistance of counsel, Yelizarov filed a supplemental motion to vacate his conviction under 18 U.S.C. § 924(c) for brandishing a firearm. J.A. 108–10. He argued, correctly, that kidnapping and conspiracy to commit a Hobbs Act robbery could not serve as predicate offenses for a conviction of brandishing a firearm in connection with a crime of violence. *Id*. Judge Hollander granted his motion, vacated the sentence, and set the case for resentencing solely for the convictions of kidnapping and conspiracy to commit a Hobbs Act robbery. J.A. 135–36. She again sentenced Yelizarov to thirty years, consistent with the plea agreement. J.A. 825.

Yelizarov now appeals his resentencing as both procedurally and substantively unreasonable. He claims that the district court engaged in procedural error when it failed to consider a key factor in sentencing: the need to avoid unwarranted sentencing disparities. In arguing substantive unreasonableness, Yelizarov asserts that the district court improperly weighed a sentencing factor. In his plea agreement, however, Yelizarov knowingly and intelligently waived his right to appeal his conviction. Since he cannot raise these issues, we dismiss that portion of his appeal.

In the second plea agreement, Yelizarov agreed to waive his right to appeal his sentence, including for reasons related to the sentence imposed and the weighing of the sentencing factors. J.A. 65. We review the validity of a waiver of appeal *de novo*. *See*

16

*United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016). We "will enforce the waiver if it is valid and the issue appealed is within the scope of the waiver." *Id.* The defendant must have waived his right to appeal knowingly and voluntarily. *Id.* A "properly conducted Rule 11 colloquy establishes the validity of a waiver." *Id.*

At the outset, the district court discussed the waiver of appeal with Yelizarov at the plea hearing. Judge Motz told him explicitly,

> Now, in terms of appeal provisions, you knowingly waive your right to appeal from your convictions, and, provided that I impose a 360 months sentence that you and the government agree to, you waive your right to appeal. If I were not to impose that, which I am not going to do—I'm either going to reject it or impose it—then you could, of course, appeal my sentence because I would have acted unlawfully.

J.A. 44. Yelizarov affirmed that he voluntarily pleaded guilty anyway. J.A. 39. Near the end of the plea hearing, the district court found that Yelizarov was competent to enter into the plea and that he did so freely and voluntarily. J.A. 50. Yelizarov's Rule 11 colloquy demonstrates that he knowingly waived his right to appeal.

The issues that Yelizarov now appeals—that the district court failed to consider a sentencing factor and that it weighed one sentencing factor too heavily—fall within the scope of the waiver. Yelizarov agreed to waive his right to appeal his sentence, including for reasons related to the sentence imposed and the weighing of the sentencing factors.

We may refuse to enforce a waiver of a defendant's right to appeal, however, in "limited circumstances." *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023). One such circumstance includes instances where the agreement to a waiver of appeal resulted from ineffective assistance of counsel. *See United States v. Johnson*, 410 F.3d

17

137, 151 (4th Cir. 2005). We have, however, already concluded that Waldman did not provide ineffective assistance of counsel, so Yelizarov's challenge to his waiver of appeal on that basis fails.

Another circumstance includes when a "miscarriage of justice" would occur if the appellate court did not allow the defendant to appeal, such as when the defendant makes "a cognizable claim of actual innocence." *Adams*, 814 F.3d at 182; *see also McKinney*, 60 F.4th at 192; *Johnson*, 410 F.3d at 151. Yelizarov relies on our decision in *McKinney* to support the proposition that he is innocent of the 924(c) charge. 60 F.4th at 192. In *McKinney,* the district court denied McKinney's § 2255 motion to vacate his § 924(c) conviction predicated on Hobbs Act conspiracy due to his waiver of appeal despite our decision in *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (*en banc*), that Hobbs Act conspiracy cannot act as a predicate crime of violence for a § 924(c) charge. *Id.* at 192. We reversed, finding that it would be a miscarriage of justice to enforce the waiver of appeal in that instance, since McKinney raised a cognizable claim of actual innocence. *Id.* at 193.

Those are not the facts here. The district court has not refused to vacate his § 924(c) conviction due to the waiver of appeal. Rather, the district court vacated Yelizarov's § 924(c) conviction. Yelizarov now appeals the sentence that he received on resentencing *after* the district court vacated the § 924(c) conviction. While Yelizarov may have had a cognizable claim of actual innocence of the § 924(c) conviction, that conviction had already been vacated before sentencing. He was not resentenced on that charge, and no miscarriage of justice would occur if we enforced the waiver of appeal clause of his plea

18

agreement. In fact, the plea agreement envisioned that the § 924(c) conviction might be vacated, and Yelizarov agreed to a 360-month sentence even without the § 924(c) charge. This is precisely what he received, so no miscarriage of justice occurred. The waiver of appeal, therefore, is valid, and we enforce it here. Yelizarov's remaining arguments, therefore, are foreclosed by that waiver.

Though we will enforce the waiver of appeal, we pause to address one argument that Yelizarov makes in his claim that the district court engaged in procedural unreasonableness in resentencing him to his original 30-year sentence. Yelizarov contends that the district court committed procedural or substantive error when it did not specifically mention or explain the need to avoid unwarranted sentencing disparities, a sentencing factor under 18 U.S.C. § 3553(a). In essence, Yelizarov calls on us to second guess the discretion of the district court to choose the appropriate sentence under the guise of a statutory challenge.

Although the district court must present sufficient analysis upon which we can conclude that it "considered the parties' arguments and has a reasoned basis for" its judgment, we have consistently held that a sentencing court does not need to provide an "exhaustive" explanation for its sentencing decision, nor does it need to "robotically tick through the § 3553(a) factors." *United States v. Friend*, 2 F.4th 369, 379 (4th Cir. 2021) (internal citations omitted). We make clear again today: a failure of the district court to

19

say some specific words in sentencing a criminal defendant does not in itself constitute procedural unreasonableness or a failure to consider the appropriate § 3553(a) factors.

IV.

For the foregoing reasons, the district court's decision to deny Yelizarov's § 2255 motion based on ineffective assistance of counsel is affirmed, and Yelizarov's sentencing challenge is dismissed.

*AFFIRMED IN PART AND DISMISSED IN PART*