**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 23-6245**

─────────────

UNITED STATES OF AMERICA,

　　　　　Plaintiff – Appellee,

　　v.

OKECHUKWU DIMKPA,

　　　　　Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:19-cr-00443-CCE-1; 1:22-cv-00770-CCE-LPA)

─────────────

Argued:  September 9, 2025　　　　　　　　　Decided:  March 3, 2026

─────────────

Before DIAZ, Chief Judge, and WYNN and HARRIS, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Wynn joined.

─────────────

**ARGUED:**  Blair T. Westover, THE LAW OFFICES OF BEAU B. BRINDLEY, Chicago, Illinois, for Appellant.  Julie C. Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:**  Beau B. Brindley, THE LAW OFFICES OF BEAU B. BRINDLEY, Chicago, Illinois, for Appellant.  Randall S. Galyon, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

─────────────

PAMELA HARRIS, Circuit Judge:

Dr. Okechukwu Dimkpa pled guilty to unlawfully distributing oxycodone in violation of 21 U.S.C. § 841(a)(1). Three years later, in *Ruan v. United States*, 597 U.S. 450 (2022), the Supreme Court held that § 841's scienter provision requires the government to prove that a physician knew he was acting in an unauthorized manner when prescribing a controlled substance, such as oxycodone. Dimkpa then filed a § 2255 motion challenging his convictions under § 841, arguing that his guilty plea was not knowing and voluntary because he was not informed of the *mens rea* requirement articulated in *Ruan*.

The district court denied Dimkpa's motion, finding that Dimkpa had procedurally defaulted his *Ruan*-based claim by failing to raise it during his initial criminal proceeding, and that he had not shown cause to overcome this default. Although *Ruan* had yet to be decided when Dimkpa pled guilty, the district court reasoned, the legal basis for a *Ruan*-style claim was reasonably available to Dimkpa at that time. Accordingly, Dimkpa's *mens rea* argument was not sufficiently novel to constitute cause for his procedural default. We agree and therefore affirm the judgment of the district court.

## I.

### A.

Defendant Okechukwu Dimkpa, a physician, was charged with six counts of unlawfully distributing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). That statute makes it a federal crime, "[e]xcept as authorized," for any person "knowingly or intentionally" to "manufacture, distribute, or dispense" a controlled

2

substance. 21 U.S.C. § 841(a)(1). Registered doctors may prescribe such substances to their patients, but pursuant to federal regulations, "a prescription is only authorized when a doctor issues it 'for a legitimate medical purpose . . . acting in the usual course of his professional practice.'" *Ruan*, 597 U.S. at 454 (alteration in original) (quoting 21 C.F.R. § 1306.04(a) (2021)).

Dimkpa's charges corresponded to six instances in which he prescribed oxycodone to the same patient. According to the government, those prescriptions were not "authorized" under § 841 and were instead "outside the course of usual medical practice" and "not medically legitimate." J.A. 44–45. Dimkpa was aware, the government alleged, that his patient was addicted to opioids – because his patient told him so – and nevertheless continued to prescribe oxycodone. And each of the six prescriptions in question was issued immediately after the patient tested positive for heroin or cocaine. Five days after receiving the last of his oxycodone prescriptions from Dimkpa, the patient died of an opioid-involved drug overdose.[1]

Dimkpa pled guilty to all six charges in September 2019. At the plea hearing, the district court informed Dimkpa that should the case proceed to trial, the government would be required to prove each element of the charged § 841 offense beyond a reasonable doubt. And that would include, the district court explained, proof that Dimkpa had acted in an unauthorized manner by prescribing oxycodone "outside the usual course of professional practice." J.A. 60. But consistent with then-governing Fourth Circuit precedent, the

---

[1] More specifically, a medical examiner determined that the patient died of "Acute Combined Drug Toxicity (oxycodone, alprazolam)." J.A. 43.

3

district court did not inform Dimkpa that the government would have to prove that he *knew* his prescriptions were unauthorized as outside the bounds of professional practice. *See United States v. Hurwitz*, 459 F.3d 463, 477–80 (4th Cir. 2006) (applying an objective rather than subjective standard to a physician's "good faith" defense that his prescriptions were authorized).

Satisfied that Dimkpa's guilty plea was knowing and voluntary, the district court accepted it and sentenced Dimkpa to 46 months of imprisonment – the low end of the applicable Sentencing Guidelines range – followed by three years of supervised release. Dimkpa did not pursue a direct appeal.

**B.**

In June 2022, nearly three years after Dimkpa's 2019 guilty plea, the Supreme Court held in *Ruan v. United States* that a physician can be convicted under § 841 only if the government proves that he "knowingly or intentionally acted in an unauthorized manner." 597 U.S. at 457. Section 841, recall, makes it unlawful, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. § 841(a)(1). In *Ruan*, the Supreme Court, citing the "presumption of scienter," held that § 841's "knowingly or intentionally" *mens rea* applies not only to the "manufacture, distribute, or dispense" clause, but also to the "except as authorized" clause. 597 U.S. at 457–59. To convict a physician under § 841, in other words, it is not enough that "a prescription was *in fact* not authorized"; the government must prove beyond a reasonable doubt that "the doctor *knew* or *intended* that the prescription was unauthorized." *Id.* at 454–55 (emphasis in original).

4

Dimkpa, proceeding *pro se*, moved to vacate his § 841 convictions pursuant to 28 U.S.C. § 2255. He argued that his guilty plea was constitutionally invalid because the district court did not inform him of the scienter requirement newly recognized in *Ruan*. The government did not dispute that Dimkpa's plea colloquy was inadequate under *Ruan*.[2] Instead, the government invoked the doctrine of procedural default. Dimkpa's *Ruan* claim was barred, the government argued, because it was not raised during Dimkpa's initial criminal proceeding or on direct appeal, and Dimkpa failed to overcome this default by showing either cause and prejudice or actual innocence.

The district court agreed with the government and denied Dimkpa's motion. *Dimkpa v. United States*, 2023 WL 2349599, at *1 (M.D.N.C. Mar. 3, 2023). As the court recounted, Dimkpa did not challenge the *mens rea* required to sustain a § 841 conviction at the time he pled guilty, nor did he file a direct appeal from his convictions. *Id.* at *2, *4. The claim was therefore procedurally defaulted, and could be raised in post-conviction proceedings only if Dimkpa established a basis for excusing the default. *Id.* at *4. Relevant here, the district court ruled that Dimkpa's reliance on *Ruan* – new authority that post-dated his guilty plea – was not enough to demonstrate cause under the cause and prejudice standard. *Id.*

A claim based on intervening Supreme Court precedent can constitute cause for purposes of procedural default, the court explained, but only if the claim is "so novel that its legal basis [was] not reasonably available to counsel" before the Supreme Court's

---

[2] The government expressly conceded that *Ruan* applies retroactively on collateral review, and that Dimkpa's § 2255 motion was timely filed.

decision and at the time the claim should have been raised. *Id.* (alteration in original) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). And here, the district court concluded, Dimpka's *Ruan*-style claim was "reasonably available" at the time of his guilty plea in 2019, regardless of whether it could have succeeded under then-governing Fourth Circuit precedent. *See id.* ("[A]lleged futility cannot serve as 'cause' for a procedural default . . . if it means simply that a claim was unacceptable to that particular court at that particular time." (alteration in original) (quoting *Whiteside v. United States*, 775 F.3d 180, 185 (4th Cir. 2014) (en banc))).

In 2019, the district court reasoned, the Supreme Court had not foreclosed Dimkpa's argument regarding the *mens rea* required to convict a physician under § 841. *Id.* Moreover, other defendants had taken advantage of that opening, raising claims just like Dimkpa's around the time of Dimkpa's guilty plea. *Id.* And finally, months before Dimkpa's plea colloquy, the Supreme Court had adopted a defendant's very similar *mens rea* argument under a different statute: In *Rehaif v. United States*, 588 U.S. 225 (2019), the Supreme Court applied the same presumption of scienter it would rely on in *Ruan* and held that in a prosecution under 18 U.S.C. § 924(a)(2) for a "knowing" violation of 18 U.S.C. § 922(g), the government must prove not only that a defendant knew he possessed a firearm but also that he knew he was within a class of persons prohibited from possessing a firearm under § 922(g). 588 U.S. at 227, 229; *see Dimkpa*, 2023 WL 2349599, at *4 & n.7 (discussing *Rehaif*). For these reasons, the district court concluded, the claim pressed by Dimkpa in his § 2255 motion was reasonably available at the time of his plea and on

6

direct review, and the intervention of *Ruan* did not qualify as cause for his failure to raise the claim then. *Dimkpa*, 2023 WL 2349599, at *4.[3]

Having determined that Dimkpa could not overcome his procedural default on the basis of cause and prejudice, the district court turned to Dimkpa's remaining argument: that his procedural default could be excused by actual innocence. *Id.* at *5. But Dimkpa could not prevail on that ground, either, the court concluded: "The inference that Dr. Dimkpa knew prescribing these medicines was not appropriate is strong," and Dimkpa could not show that "in light of all the evidence available, 'it is more likely than not that no reasonable juror would have convicted him' of any charge." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Accordingly, the district court ruled that the procedural default doctrine precluded Dimkpa from asserting his *Ruan*-based claim on collateral review, and denied Dimkpa's motion to vacate his § 841 convictions. *Id.* at *6. The district court then issued Dimkpa a certificate of appealability, and this timely appeal followed.

---

[3] The district court did find that Dimkpa could satisfy the prejudice prong of the cause and prejudice standard. His argument at sentencing focused on a claim that he did not know his prescriptions were unauthorized – specifically, that he did not know prescribing oxycodone to a patient using heroin and cocaine was medically inappropriate if the patient had other legitimate medical needs supporting the prescription. Given that argument, the district court explained, "Dimkpa probably would not have pled guilty if he had realized the government would have to prove that he knew the distribution of oxycodone was inappropriate." *Dimkpa*, 2023 WL 2349599, at *4. But as the district court correctly recognized, prejudice alone is insufficient to overcome a procedural default; the cause prong must also be satisfied. *Id.*

## II.

We review the district court's denial of a § 2255 motion *de novo*. *United States v. McKinney*, 60 F.4th 188, 191 (4th Cir. 2023). On appeal, Dimkpa challenges only the district court's determination that he failed to show cause for his procedural default, maintaining that his *Ruan*-based *mens rea* claim was sufficiently novel at the time he pled guilty that his failure to raise it on direct review should be excused.[4] We disagree and therefore affirm the judgment of the district court.

## A.

Habeas review should not take the place of an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Accordingly, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* at 622 (citations omitted). "[A] claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Id.* (quoting *Reed*, 468 U.S. at 16).

That "novelty" standard is a high one. *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992). As the district court explained – and Dimkpa does not dispute – it is not enough that at the time Dimkpa pled guilty, Fourth Circuit precedent foreclosed application of a subjective scienter standard to § 841's "except as authorized" clause. *See Hurwitz*, 459 F.3d at 477–80 (rejecting subjective "good faith" standard in favor of objective standard);

---

[4] Dimkpa does not challenge the district court's ruling that he failed to show actual innocence.

8

*United States v. Smithers*, 92 F.4th 237, 247 (4th Cir. 2024) (explaining, on direct review, that it "would have been futile for [the defendant] to argue for a subjective standard" in the Fourth Circuit before *Ruan* was decided). That kind of futility, the Supreme Court has held – that a claim cannot prevail in front of a specific court at a particular point in time – cannot qualify as cause for a procedural default. *Bousley*, 523 U.S. at 623. Nor is it enough that this issue was unsettled in 2019, when Dimkpa entered his plea. The law is "often in a state of flux," and the "mere fact that certain legal principles are unsettled" at the relevant time "does not deprive a competent attorney of a 'reasonable basis' for asserting a claim." *United States v. Gaylor*, 828 F.2d 253, 256–57 (4th Cir. 1987). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).

In *Reed v. Ross*, 468 U.S. 1 (1984), the Supreme Court identified three situations in which "the novelty of a claim could constitute cause," *McKinney*, 60 F.4th at 194:

> First, a decision of the Supreme Court may explicitly overrule one of its precedents. Second, a decision may overturn a longstanding and widespread practice to which the Supreme Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove [of] a practice the Supreme Court arguably has sanctioned in prior cases.

*Id.* (cleaned up) (quoting *Reed*, 468 U.S. at 17). Dimkpa relies heavily on these *Reed* categories in making his argument, and we agree that this framework may helpfully inform the inquiry into whether a claim is so "novel" that it was not "reasonably available" at the

9

time of a default. But as subsequent Supreme Court precedent makes clear, the *Reed* categories may not be dispositive, and the analysis does not stop there.

As our court has explained, after the Supreme Court decided *Reed*, it "elaborated on just what constitutes a novel claim" in *Bousley v. United States*. *United States v. Sanders*, 247 F.3d 139, 144–45 (4th Cir. 2001). There, the Court held that a claim about the scope of 18 U.S.C. § 924(c)(1)'s prohibition on "use" of a firearm was "reasonably available" for years before it was adopted by the Supreme Court. *Id.* (citing *Bousley*, 523 U.S. at 616, 622–23). In reaching that conclusion, the Court did not reference the *Reed* categories. Instead, it focused directly on the bottom-line inquiry: Was the "legal basis" for the defendant's claim "reasonably available to counsel" at the time of the default? *Bousley*, 523 U.S. at 622; *see Sanders*, 247 F.3d at 144. And while the Court recognized that its decision narrowing the scope of § 924(c)(1) in *Bailey v. United States*, 516 U.S. 137 (1995), had "changed the relevant legal landscape," it still concluded that the basis for the petitioner's claim was "reasonably available" years before *Bailey* was decided, emphasizing that other defendants already were raising *Bailey*-style claims. *Sanders*, 247 F.3d at 145 (citing *Bousley*, 523 U.S. at 622–23).

Consistent with that approach, we have held that a claim is not sufficiently "novel" to qualify as cause for a default where prior Supreme Court decisions provided a defendant with the "essential legal tools" for his claim. *Sanders*, 247 F.3d at 146. Even if it is only later that the Supreme Court actually settles the issue, in other words, a claim is "reasonably available" if prior precedent "laid the basis for" it. *Engle v. Isaac*, 456 U.S. 107, 131–33 (1982); *see*, *e.g.*, *Turner v. Jabe*, 58 F.3d 924, 929 (4th Cir. 1995). And the fact that other

10

defendants "perceived and litigated" similar claims around the same time indicates that a claim is not so "novel" that it can excuse a default. *Engle*, 456 U.S. at 134; *see, e.g.*, *Bousley*, 523 U.S. at 622–23, 623 n.2; *Sanders*, 247 F.3d at 145; *Turner*, 58 F.3d at 929.

**B.**

Against that background, we turn to Dimkpa's contention that his claim was sufficiently "novel" to constitute cause for his 2019 default. We appreciate that it was not until three years later that the Supreme Court embraced Dimkpa's position in *Ruan*. And we recognize, as Dimkpa argues, that *Ruan*'s endorsement of a subjective *mens rea* requirement for § 841's "except as authorized" clause "changed the law in this circuit" and many others. *United States v. Kim*, 71 F.4th 155, 160 (4th Cir. 2023). But that alone is not enough to establish cause in this case.

In our 2006 decision in *Hurwitz*, we adopted what we believed to be the consensus position of the federal courts of appeals, holding that § 841 did not require the government to prove that a doctor knew or intended to prescribe in an unauthorized manner, but only that a doctor's prescriptions were objectively unauthorized. 459 F.3d at 479 ("We believe that the inquiry must be an objective one, a conclusion that has been reached by every court to specifically consider the question."). And it appears that this consensus only grew in the years after *Hurwitz* was decided. *See* Brief for Defendant-Appellant at 21–22 (collecting cases).[5] So when *Ruan* held that the government *was* required in a § 841

---

[5] Still, the consensus was not unanimous: The Seventh and the Ninth Circuits required the government to prove that a doctor intended to act in an unauthorized manner. *See United States v. Chube II*, 538 F.3d 693, 698 (7th Cir. 2008); *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006).

prosecution to prove that a doctor knowingly or intentionally acted in an unauthorized manner, it abrogated the law in multiple circuits, including our own, *see Smithers*, 92 F.4th at 250, and "changed the relevant legal landscape," *Sanders*, 247 F.3d at 145. *See Reed*, 468 U.S. at 17 (describing category of cases in which a Supreme Court decision "overturn[s] a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved").

But however strong this former circuit-court consensus, it did not place the "legal basis" for Dimkpa's *Ruan*-style challenge beyond the realm of "reasonable availability" at the time of Dimkpa's default. That is primarily because of an unusual feature of this case, emphasized by the district court: Three months before Dimkpa pled guilty and six months before he was sentenced, a strikingly similar *mens rea* claim was embraced by the Supreme Court in *Rehaif v. United States*. *See Dimkpa*, 2023 WL 2349599, at *4 & n.7. Whatever the state of play before *Rehaif*, after *Rehaif*, Dimkpa "plainly had at his disposal the essential legal tools with which to construct his claim." *Sanders*, 247 F.3d at 146.

Dimkpa's claim, again, rests on the proposition that § 841's "knowingly or intentionally" *mens rea* modifies not only "manufacture, distribute, or dispense" – the clause immediately following it – but also the preceding "except as authorized" clause. In *Rehaif*, the Court considered an analogous (if slightly more ambitious) claim about the scope of the word "knowingly" as used in 18 U.S.C. § 924(a)(2), which penalizes anyone who "knowingly" violates a different statute, 18 U.S.C. § 922(g). 588 U.S. at 227. Section 922(g), in turn, prohibits firearm possession by certain individuals, including

12

convicted felons and noncitizens illegally in the United States. *Id.* The defendant in *Rehaif* argued that § 924(a)(2)'s *mens rea* requirement applied across statutes to modify all elements of an antecedent § 922(g) offense. And the Supreme Court agreed, holding that § 924(a)(2)'s "knowingly" modifier is not limited to the words immediately following it, *see Ruan*, 597 U.S. at 461 (discussing *Rehaif*), and instead requires that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm," *Rehaif*, 588 U.S. at 237.

Despite these parallels, *Rehaif* might be less important here if the Supreme Court had "carefully crafted [that] holding to avoid deciding whether [its] logic . . . applied outside the context" of the particular statutory scheme at issue. *United States v. Brown*, 868 F.3d 297, 302 (4th Cir. 2017). But the Court in *Rehaif* did exactly the opposite. It framed its holding as an application of broad and basic criminal law principles: the "universal" understanding that "an injury is criminal only if inflicted knowingly," and the concomitant "longstanding" and "ordinary presumption in favor of scienter" when construing criminal statutes. *Rehaif*, 588 U.S. at 229, 231. It situated its holding within a "legion" of cases "emphasiz[ing] scienter's importance in separating wrongful from innocent acts." *Id.* at 231. And it underscored that while the presumption of scienter applies even when a statute specifies no *mens rea*, the presumption applies "with equal or greater force" when – as in § 924(a)(2) in *Rehaif*, and § 841 in this case – Congress *has* included a general scienter provision in the statutory scheme. *Id.* at 229.

13

Those principles apply straightforwardly to Dimkpa's *Ruan*-style claim. And we know this because when the Supreme Court decided *Ruan* three years later, its reasoning mirrored that of *Rehaif*, and it relied on *Rehaif* throughout. In *Ruan*, as in *Rehaif*, the Court started from fundamental principles of criminal law: the maxim that "wrongdoing must be conscious to be criminal" and the presumption of scienter. *Ruan*, 597 U.S. at 457–58 (citing *Rehaif*, 588 U.S. at 229). The Court observed, again, that because § 841 contains a general scienter provision, the presumption of scienter "applies with equal or greater force" in construing its scope. *Id.* at 458 (quoting *Rehaif*, 588 U.S. at 229). The Court characterized *Rehaif*, specifically, as "[a]nalogous precedent" concerning "the mental state that applies to a statutory clause" – in *Ruan*, the "except as authorized" clause – "that does not immediately follow the scienter provision." *Id.* at 461. And the Court concluded, as it had before, that application of a scienter requirement would play a "crucial role" in separating presumptively innocent acts (such as possession of a licensed firearm or prescription of medication by a physician) from wrongful conduct. *Id.* at 458–59, 464 (citing *Rehaif*, 588 U.S. at 231–32).

*Ruan* was not, of course, a carbon copy of *Rehaif*. *See id.* at 468–73 (Alito, J., concurring in the judgment) (arguing that *Rehaif* is distinguishable). But "reasonable availability" does not demand an exact match. *See Gaylor*, 828 F.2d at 256–57 (claim may be "reasonably available" before an issue is settled by the Supreme Court). For procedural default to apply, it is enough if a defendant and his counsel have available the "tools to construct their [] claim." *Engle*, 456 U.S. at 133. And months before Dimkpa pled guilty, was sentenced, and forwent an appeal in 2019, *Rehaif* had given Dimkpa and his lawyer

14

"the legal tools, *i.e.*, case law, necessary to conceive and argue" a *Ruan*-style claim. *Poyner*, 964 F.2d at 1424; *see Sanders*, 247 F.3d at 145–46 (applying similar reasoning to find that *Apprendi*-style claims were "reasonably available" in years before Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

It is no surprise, then, that other defendants were raising *Ruan*-style claims well before *Ruan* was decided. As the district court noted, defendants in the Fourth Circuit were bringing such challenges around the time of Dimkpa's default, *Dimkpa*, 2023 WL 2349599, at *4, as were defendants in other circuits, *see* Response Brief of the United States at 19 & n.2 (listing cases from the Fourth Circuit and other circuits). That other defendants already were pursuing what would become *Ruan* claims is good evidence that "the foundation for [*Ruan*] was laid" before *Ruan* was decided in 2022, *Sanders*, 247 F.3d at 145, and that Dimkpa's claim was not so "novel" that it can constitute cause for a default. *See Bousley*, 523 U.S. at 622 (reasoning that petitioner's claim did not qualify as "novel" because "at the time of petitioner's plea, the Federal Reporters were replete with cases involving [similar] challenges").

Finally, we are unpersuaded by Dimkpa's argument that his claim was not "reasonably available" until *Ruan* was decided because *Ruan* overturned the Supreme Court's prior precedent in *United States v. Moore*, 423 U.S. 122 (1975), or at least "disapprove[d] [of] a practice [the Supreme Court] arguably ha[d] sanctioned" in *Moore*. *Reed*, 468 U.S. at 17 (identifying situations in which claim might not be reasonably available to petitioner). *Ruan* did not overrule *Moore*. Instead, it distinguished it: "[T]he question in *Moore* was whether doctors could *ever* be held criminally liable under § 841.

15

*Moore* did not directly address the question before us here regarding the *mens rea* required to convict under the statute." *Ruan*, 597 U.S. at 466 (emphasis in original) (citation omitted). Moreover, the Court expressly rejected the argument Dimkpa now advances, pressed in *Ruan* by the government: that *Moore* had "effectively endorsed" an objective scienter standard. *See id.* Given the Supreme Court's own analysis of its precedent, we are not at liberty to adopt a contrary view and find that *Moore* sanctioned the objective standard later disapproved of in *Ruan*.

This case is thus distinguishable from *United States v. McKinney*, in which we found cause for a petitioner's default of a vagueness challenge to the residual clause of 18 U.S.C. § 924(c) in the years before the Supreme Court invalidated a similar residual clause in *Johnson v. United States*, 576 U.S. 591 (2015). *See McKinney*, 60 F.4th at 191, 193–95. Until 2015, we explained, Supreme Court precedent had "effectively foreclosed" such a claim, "affirmatively uph[olding] the constitutionality of residual clauses like the one at issue." *Id.* at 194. A claim "foreclosed" by binding Supreme Court precedent may well be "unavailable" in a way that constitutes cause for a default. *See id.*; *Reed*, 468 U.S. at 17. Here, however, the Supreme Court has expressly instructed that its decision in *Moore* did not even address, let alone foreclose, the *mens rea* claim Dimkpa defaulted. *Ruan*, 597 U.S. at 466.

Accordingly, we agree with the district court that the legal basis for Dimkpa's *mens rea* claim was "reasonably available to him" at the time he pled guilty and then failed to pursue a direct appeal. His failure to assert that claim was therefore a procedural default for which no cause can be shown, and on that ground, collateral relief is precluded.

16

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*